**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Erica Bojicic, *et al.*,                                        Case No. 3:21-CV-00630-JGC

            Plaintiffs

     v.                                              **ORDER**

Michael DeWine, *et al.*,

            Defendants.


In this action, fifteen dance studio owners challenge "the numerous orders, rules, and regulations issued by the State of Ohio in response to COVID-19." (Doc. 1, pgID 16). They have named as defendants Governor Michael DeWine, the Ohio Department of Health's present and former Directors, Ohio, and fifteen city and county Health Commissioners. Plaintiffs have sued all defendants in both their official and personal capacities.[1] They have raised three claims against all defendants: 1) substantive due process; 2) equal protection; and 3) taking without just compensation. Plaintiffs seek a declaratory judgment, just compensation for the defendants' alleged taking of their properties, and $1,000,000 in compensatory damages for each of the fifteen plaintiffs.

Various individual defendants and groups of defendants have filed five motions to dismiss. (Docs. 24-27, 32). Defendant Eric Zgodzinski has filed a motion seeking judgment on the pleadings. (Doc. 21).

For the reasons discussed below, I grant each of those motions.

---

[1] To date, plaintiffs have dismissed their claims against seven of the fifteen city and county Health-Commissioner defendants voluntarily.

**Background**

Plaintiffs' complaint only mentions two Covid-related orders. Plaintiffs first challenge an order that they allege (without citation or attaching the order as an exhibit) was issued "[O]n or about March 20, 2020." (Doc. 1, pgID 14). Plaintiffs do not specify who issued that order. There are several orders that Amy Acton, the then-Director of the Ohio Department of Health (the "Health Director"), issued around that time to which plaintiffs could be referring.[2]

The effect of those orders was that plaintiffs had to close their dance studios for the duration of the Governor's declared Covid-related state of emergency (Doc. 20-1). This is because the orders did not designate dance studios as essential businesses, and all non-essential businesses had to cease operations. (Doc. 20-2).

Plaintiffs also mention (without citation or providing a copy) the Health Director's 2020 order that authorized reopening their facilities "so long as all safety standards [we]re met," specifically including social distancing, (*id.*, pgID 184). (Doc. 1, pgID 15).[3]

---

[2] Although plaintiffs failed to identify any of the orders they mention in their complaint, defendant Zgodzinski has attached copies of three orders to his answer, (Doc. 20), that appear relevant to plaintiffs' allegations. Those orders are: 1) Order to Cease Business Operations and Close Venues (March 21, 2020) (Doc. 20-1); 2) Director's Stay at Home Order (March 22, 2020) (Doc. 20-2); and 3) Director's Order that Reopens Gyms, Dance Instruction Studios, and Other Personal Fitness Venues, with Exceptions (May 22, 2020) (Doc. 20-3).

 I may consider documents that a defendant attaches to a pleading if the complaint refers to those documents and they are central to the plaintiffs' claims. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997). In addition, I may consider public records and matters of which a court may take judicial notice. *See Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506 (2002); *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003).

[3] Plaintiffs appear to be referring to the Director's May 22, 2020 Order that Reopens Gyms, Dance Instruction Studios, and Other Personal Fitness Venues, with Exceptions. (Doc. 20-3).

Nevertheless, plaintiffs purport to challenge "[c]ollectively, the numerous orders, rules, and regulations issued by the State of Ohio in response to COVID-19." (Doc. 1, pgID 16). They do so without even identifying those "numerous orders" or discussing their contents.

### Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

When considering a Rule 12(b)(6) motion, I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555.[4]

Because "[t]he same standard applies to a rule 12(c) motion [for judgment on the pleadings] as to a rule 12(b)(6) motion to dismiss for failure to state a claim for relief," *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998), I will not distinguish those motions in

---

[4] Plaintiffs' attempt to lessen these pleading requirements is meritless because it relies on cases that have no relevant precedential value. In *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court expressly applied "less stringent" pleading standards because the plaintiff proceeded *pro se*. Plaintiffs, here, are represented by counsel. Plaintiffs' second cited case on this issue is the Second Circuit's opinion in *Iqbal v. Hasty*, 490 F3d 143 (2d Cir. 2007). That is the very decision that the Supreme Court reversed in *Iqbal*.

3

my analysis. Applying this standard of review to plaintiffs' complaint, I conclude for the reasons that follow: 1) the complaint fails to meet the requirements of Fed. R. Civ. P. 8 and the *Iqbal/ Twombly* mandates; 2) plaintiffs' complaint failed to demonstrate that they have standing to sue the defendants; 3) plaintiffs' substantive claims fail to state cognizable causes of action; and 4) in any event the defendants are immune from being held liable for monetary damages.

### Discussion

### 1.  The Complaint Fails to Comply with *Iqbal//Twombly*

In light of the foregoing pleading principles, I must first determine whether the complaint states a claim under the standards set forth by Federal Rule of Civil Procedure 8 and in the Supreme Court's *Iqbal* and *Twombly* decisions. I conclude that it does not. Plaintiffs' complaint is riddled with conclusory statements and is almost completely devoid of factual support. While Rule 8(a) directs plaintiffs to submit a "short and plain statement of the claim," that does not give them license to omit crucial supporting facts from the complaint.

In *Iqbal*, the Supreme Court highlighted the difference between factual assertions entitled to the assumption of truth and conclusory statements:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S. Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the

4

> reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, *supra*, 556 U.S. at 678-79.

The Sixth Circuit further emphasized the importance of factual allegations, stating that "a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its 'factual content,' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Iqbal*, *supra*, 556 U.S. at 678).

## A.  Identification of Defendants' Specific Actions

One glaring deficiency in the complaint is that plaintiffs do not attribute any actions to specific defendants. Instead, they lump the defendants together, making their allegations against "the Defendants" collectively. Even when plaintiffs discuss the March 2020 and May 2020 orders, they state that "Defendants" collectively were responsible for issuing them. As discussed *infra* in Section 2(B), the orders, which Director Acton alone issued, bely that statement.

Plaintiffs attempt to invoke joint liability against the defendants with the following statement: "Defendants have acted jointly and severally and with malice in violating the rights of the Plaintiffs and are listed here." (Doc. 1, pgID 10). However, this sweeping statement does not cure their failure to link individual defendants with specific actions because the law requires more.

Plaintiffs bring their claims pursuant to 42 U.S.C.A. § 1983. "'[T]o establish liability under section 1983, against an individual defendant, [the] plaintiff must plead and prove that the

5

defendant was personally involved in the activity that forms the basis of the complaint.'" *Slusher v. Carson*, 488 F. Supp. 2d 631, 638 (E.D. Mich. 2007) (quoting *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991)). "It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by [ ] each of the named defendants." *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (same); *see also Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."). Further "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Boddie v. City of Lima, Ohio*, No. 16-CV-1850, 2018 WL 1847934, at *2 (N.D. Ohio) (Helmick, J.) (emphasis in original) (quoting *Iqbal*, *supra*, 556 U.S. at 676).

With the exception of Director Acton, the complaint fails to identify conduct fairly attributable to any specific defendant. As a result, plaintiffs' claims against those other defendants must fail. I therefore dismiss all claims against the city and county defendants and against the state defendants other than Director Acton for this reason.

## B.  Unidentified Orders

In addition, as I have already noted, plaintiffs do not sufficiently identify the offending order or orders in their complaint. They state only that "Defendants" issued a "Director's Order . . . [o]n or around March 20, 2020." (Doc. 1, pgID 14).

According to the Ohio Department of Health's website, the only Covid-related order issued on March 20 related to the closure of hair salons, day spas, and nail salons.[5] This does not appear relevant to plaintiffs.

The Ohio Department of Health issued a total of eighteen Covid-related orders between the middle and end of March 2020. There are several that could implicate plaintiffs' interests, including the Director's March 21, 2020 Order to Cease Business Operations and Close Venues and the Director's March 22, 2020 Stay at Home Order. The former ordered all dance studios to close, and the latter outlined the distinction between essential and non-essential businesses and ordered all non-essential business closed.

While I can make an educated guess, I cannot determine with certainty which order or orders plaintiffs meant to reference. They do not attach any orders to their filings and otherwise fail to provide sufficient information in the complaint for me to identify them.

It is not my job to sift and sort through a complaint's onrushing stream of conclusory allegations, attempting to discover something of assayable value. *Cf. D.H. v. Matti*, No. 3:14-CV-732-CRS, 2016 WL 5843805, at *3 n.2 (W.D. Ky.) ("It is not the duty of this Court to independently investigate matters outside the complaint on a Rule 12(b)(6) motion to dismiss."). I will not, and should not, try to guess at what plaintiffs meant to say. Rather, I must evaluate the complaint that is before me.

As I earlier explained to plaintiffs' attorneys Thomas Renz and Robert Gargasz in *Renz v. Ohio*, No. 3:20CV1948, 2021 WL 485534, at *3 (N.D. Ohio), plaintiffs are the masters of their complaint. They must ensure that it passes muster under Rule 8, which requires that they support

---

[5] https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/public-health-orders/public-health-orders (last visited October 22, 2021).

their claims with sufficient facts. In this case, where plaintiffs challenge a government action, they must identify the government action.

Plaintiffs' complaint purports to challenge, "[c]ollectively, the numerous orders, rules, and regulations issued by the State of Ohio in response to Covid-19." (Doc. 1, pgID 16). In their prayer for relief, plaintiffs seek declarations that all of those orders are unconstitutional. (*Id.*, pgID 23). To the extent that these orders differ from the ones I have already discussed, I cannot issue a ruling on unarticulated challenges to unidentified orders. Plaintiffs' failure to identify the orders they seek to challenge is an additional ground for dismissal.

### C.  Legal and Factual Conclusions

Plaintiffs' complaint suffers from additional pleading deficiencies, as it is endlessly replete with legal and factual conclusions that offer no substantive support for the claims they allege. While plaintiffs repeatedly allege that defendants violated their constitutional rights, they provide almost no concrete information as to how, even collectively, defendants have done so.

Plaintiffs incorporate a variety of legal buzzwords in their complaint but do not back them up with specific facts. For example, they allege that defendants acted without a "rational basis," that their actions were "arbitrary and capricious," and that they acted in an "unconstitutional, illegal, and unlawful fashion." (*Id.*, pgID 7, 16). Allegations such as these litter the complaint, but they are mere legal conclusions.

While it may be necessary to include these phrases in the complaint, plaintiffs must go beyond them in order to state a claim. *See Twombly*, *supra*, 550 U.S. at 555 (a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). I am not required to, nor will I, accept these allegations at face value. *See*

*Iqbal*, *supra*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs also include a welter of factual conclusions that similarly are not entitled to deference. For example, plaintiffs allege multiple times that defendants' unlawful behavior "destroyed" their lives. (Doc. 1, pgID 7, 16). But plaintiffs fail, as they do repeatedly throughout their complaint, to explain how this is so.

Another example of a factual conclusion from plaintiffs' complaint is their assertion that "[i]t is well established in science and under regulatory guidelines that strenuous activities should not be performed with masks on." (*Id.*, pgID 15). One cannot simply state, without supporting facts or citations, that something is scientifically well-established and expect a court to accept uncritically such contention as well-pled.[6]

## 2. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The standing doctrine distinguishes between justiciable cases and controversies and "those disputes that are not appropriately resolved through judicial process." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014). It essentially asks "whether the plaintiff has alleged such a personal stake in the outcome of the

---

[6] In *Renz*, *supra*, 2021 WL 485534, I considered a similar complaint that Thomas Renz and Robert Gargasz, the attorneys in this case, filed against Ohio. It was eighty-one pages long and incorporated voluminous exhibits, affidavits, and declarations. I ordered plaintiffs to show cause why I should not dismiss the complaint because it was overly verbose, incorporated irrelevant facts, and was not a "short and plain statement" of the claim. *Id.*; *see* Fed. R. Civ. P. 8(a)(2). The complaint in this case is much shorter. But the fundamental problem is the same. It does not give defendants fair notice of the claims against them. While the attorneys did seemingly consolidate the complaint, they did not address one of my primary concerns, which was the abundance of conclusory and speculative allegations.

controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).

Standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Further expounding on these elements, the Supreme Court has explained that an injury in fact is an "invasion of a legally protected interest" that is "concrete and particularized," not "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Traceability requires "a causal connection between the injury and the conduct complained of" and that the conduct not be a result of "the independent action of some third party." *Id.* (internal quotation marks omitted). And for an injury to be redressable, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

The plaintiff bears the burden of establishing standing. *Id.* At the pleading stage, the plaintiff must "clearly allege facts demonstrating each element." *Spokeo*, *supra*, 578 U.S. at 1547.

Several city and county defendants argue that the plaintiffs lack standing to bring this case. They primarily contend that plaintiffs cannot satisfy the causation prong of the standing analysis. This is because plaintiffs have failed to allege that any local defendant took any specific action that caused harm to them. According to these defendants, only the state defendants were responsible for issuing the orders that affected plaintiffs' businesses, and therefore, plaintiffs only have standing to bring their claims against the state defendants.

Plaintiffs respond in a conclusory fashion, arguing that they have standing because their injuries were "a direct result of the Defendants' policy and enforcement of a three-months long order of closure and other continuing mandates." (Doc. 36, pgID 366).

### A.  Injury in Fact

Regarding the first element of standing, I find that plaintiffs have sufficiently alleged an injury in fact. They allege that they suffered financial harm due to their designation as a "non-essential" business in a March 2020 "Director's Order." Plaintiffs allege that defendants forced them to close their businesses, and therefore, they were unable to earn any money.

Economic injury is the quintessential injury in fact. *See Lambert v. Hartman*, 517 F.3d 433, 437 (6th Cir. 2008) (plaintiff's "actual financial injuries are sufficient to meet the injury-in-fact requirement"); *Polyweave Packaging, Inc. v. Buttigieg*, No. 4:21-CV-00054-JHM, 2021 WL 4005616, at *3 (W.D. Ky.) ("Tangible injuries are the most common injury-in-fact: personal, property, or financial injuries all qualify as tangible injuries-in-fact.").

The injury that plaintiffs allege here certainly is economic. They complain of lost profits and revenue due to the closure of their businesses.

Furthermore, the economic harm that plaintiffs allege here is not speculative or hypothetical. The government ordered plaintiffs to close their businesses, and they allege that they did so. Therefore, any economic harm they sustained already occurred and is measurable.

While defendant Roberts fairly points out that plaintiffs' allegations regarding financial injury are vague, it is undisputed that plaintiffs were considered "non-essential" businesses and were forced to close for at least some time. Such closure almost inevitably would lead to financial harm, and plaintiffs allege that it did. Therefore, I find their allegations regarding injury in fact sufficient at this stage.

## B. Traceability

Regarding the second element of standing, I find that plaintiffs have failed to sufficiently allege traceability against any of the defendants except the former Director Acton. To satisfy the traceability requirement, plaintiffs must allege that the defendants' specific actions caused their harm. *See Lujan, supra*, 504 U.S. at 560. They have failed to do so for any defendant other than Director Acton.

Plaintiffs primarily link their harm to the March 2020 "Director's Order." (Doc. 1, pgID 14). As discussed above, while plaintiffs do not attach this order to their complaint or opposition brief, they appear to be referring to the Health Director's March 21, 2020 Order to Cease Business Operations and Close Venues or the Health Director's March 22, 2020 Stay at Home Order.

Assuming for the sake of argument that plaintiffs intended to reference one of these orders, it is clear from the face of the orders that Director Acton issued them. Both have Ohio Department of Health letterheads, and Director Acton was the head of that department. She is also the only person who signed the orders.

There is no indication from the orders themselves that the other defendants named in this lawsuit were involved with them.[7] Furthermore, plaintiffs' complaint does not sufficiently tie the "Director's Order" to the other defendants. For example, plaintiffs do not allege that defendants took actions to enhance the impact of the order or that they took specific measures to implement the order.

---

[7] While the Ohio Department of Health letterhead contains Governor Mike DeWine's name, it appears to be a form letterhead for the department. I cannot infer his involvement based on that reference alone and where there are no allegations specific to him in the complaint. Therefore, I dismiss all claims against Governor DeWine.

12

Plaintiffs assert that "Defendants" as a group "threatened to enforce this order against a Plaintiff." (*Id.*, pgID 15). But that is a conclusory assertion. To sufficiently allege standing, plaintiffs must provide facts supporting that conclusion and ultimately supporting plaintiffs' position that they have a cognizable cause of action.

The only factual support they provide for this allegation is that defendants "did signal such intent [to enforce the order] by their communications and declarations to the public, including publishing the order(s) on their website." (*Id.*). However, plaintiffs fail to explain how this action injured them. That is presumably because they cannot show that the ministerial act of posting an order on a website caused any concrete harm.

A similar set of facts arose in a recent case related to school closures during the Covid-19 pandemic. There, a group of parents sued the New Mexico Governor, Secretary of Education, and Secretary of Health, challenging the constitutionality of Covid-related school closure orders. *Hernandez v. Grisham*, 494 F. Supp. 3d 1044 (D.N.M. 2020). The court found that plaintiffs lacked standing to sue the Governor and Secretary of Health because only the Secretary of Education had control over the reentry process for schools. *Id.* at 1132-33. Plaintiffs' conclusory allegations about the three officials "working together" were not sufficient to establish standing against the Governor and Secretary of Health. *Id.*

Similarly here, plaintiffs have grouped defendants together in the complaint. They do not attribute specific actions to specific defendants, instead referring collectively to "Defendants" in almost every allegation. In fact, plaintiffs do not even allege that any specific defendant issued

13

the Director's Order. Plaintiffs must show that each defendant harmed them. As I have already

explained, it is insufficient to attribute harm to "defendants" as a group.[8]

Further, plaintiffs' allegation that "Defendants" posted the order on their websites does

not give them standing against defendants where it would not otherwise exist. As the court

explained in *Hernandez*, "[t]he Plaintiffs point to no legal authority turning press conferences

and Twitter updates into binding executive orders." *Id.* at 1135. The same reasoning applies here.

The mere posting of an order on a website has no legal effect. Even if none of the defendants

posted the Director's Order online, it still would have been binding on plaintiffs and required

them to close their businesses. The issuance of the order is the action that is traceable to

plaintiffs' financial harm, not the act of posting it online.

It is worth noting that many of the defendants in this case work for city or county health

departments. They have even less of a nexus to the conduct alleged in the complaint than the

state officials whom plaintiffs have named. These local officials had no apparent involvement in

issuing the Director's Order, and plaintiffs fail to allege that any defendant took specific action

that on its own proximately caused or added to the injuries that resulted from Director Acton's

orders. In fact, plaintiffs do not include any allegations specific to the city and county officials in

the complaint. It is therefore completely unclear what role they played, if any, in contributing to

plaintiffs' harm.

---

[8] In a similar Covid-related case filed by the same attorneys, another judge in this court found
that plaintiffs could not establish the causation prong of the standing analysis. The court
determined that plaintiffs' allegations of standing were insufficient because the alleged actions of
defendants were "predicated on the voluntary and independent decisions of multiple third
parties." *Ohio Stands Up! v. U.S. Dep't of Health & Hum. Servs.*, No. 3:20 CV 2814, 2021 WL
4441707, at \*9 (N.D. Ohio) (Knepp, J.). Plaintiffs could not tie their purported injuries to any of
the actions of the defendants in the case. Therefore, the court dismissed the complaint.

In a possible attempt to connect the local defendants with some action that independently caused or contributed to the alleged harms, plaintiffs allege that "some of the leaders of the various health departments issued additional orders of their own." (*Id.*). But they do not identify which defendants issued these orders, what these orders said, or how these orders impacted their businesses. Therefore, this allegation amounts to a mere conclusion. And while I must accept the allegations in plaintiffs' complaint as true, this directive does not apply to conclusions. *Iqbal*, *supra*, 556 U.S. at 678.

Plaintiffs have the burden of alleging specific facts demonstrating each element of standing. They have wholly failed to do so with respect to traceability. Therefore, I must dismiss plaintiffs' claims against all defendants other than Director Acton for a lack of standing.[9]

### 3. Plaintiffs' Substantive Claims Are Without Merit

Plaintiffs assert three substantive claims: 1) substantive due process; 2) equal protection; and 3) takings without just compensation. Plaintiffs contend that strict scrutiny review applies to their substantive due process and equal protection claims. I disagree.

First, the right to work is not a fundamental right subject to strict scrutiny. *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). It is subject only to rational basis scrutiny. Second, because the right to work is not a fundamental right, and dance studio owners are not a suspect class, plaintiffs' equal protection claim requires them to establish that the challenged orders "treat[ed] one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009).

---

[9] Several defendants also argue that plaintiffs cannot satisfy the redressability prong of the standing analysis. Because I find that plaintiffs have not sufficiently alleged traceability, I need not address redressability.

## A. Due Process and Equal Protection Claims[10]

---

[10] In *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905), the Supreme Court held that when a state acts to respond to a public health emergency, a court reviews that action deferentially. It stated that such action only violates the right to substantive due process if it "has no real or substantial relation to [the public health emergency] or is beyond all question, a plain, palpable invasion of rights secured by fundamental law." *Id.* Numerous courts have applied *Jacobson* to administrative orders imposing restrictions in response to Covid-19.

*See, e.g.*, *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020); *accord Klaussen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Big Tyme Investments, LLC v. Edwards*, 985 F.3d 456, 465-67 (5th Cir. 2021); *In re Rutledge*, 956 F.3d 1018, 1032 (8th Cir. 2020); *AJE Enter., LLC v. Justice*, 2021WL 4241018, at *2-5 (N.D. W. Va.) (collecting cases).

Against this overwhelming precedent, plaintiffs rely on *Cnty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 897 (W.D. Pa. 2020). In that case, a district court judge held that the deferential *Jacobson* standard is no longer good law. (*Id.*). That decision has never been subjected to direct appellate review. The Third Circuit initially stayed that judge's order, No. 20-2936, 2020 WL 5868393 (3d. Cir.), and subsequently vacated the trial court's opinion and remanded with instructions to dismiss the case as moot, 8 F.4th 226, 230 (3d. Cir. 2021). "[A] judgment that is 'unreviewable because of mootness' should not 'spawn[ ] any legal consequences' for the party who sought reversal on appeal." *Butler*, 8 F.4th at 231-32 (quoting *United States v. Munsingwear*, 340 U.S. 36, 41 (1950)).

In addition, a large majority of courts have rejected *Butler*. *See Stewart v. Justice.*, 502 F. Supp. 3d 1057, 1069 (S.D.W. Va. 2020) (*Butler* "is an outlier in COVID-related caselaw"); *AJE Enter., supra*, 2020 WL 6940381, at *2 (rejecting *Butler* because "the vast majority of courts have looked to *Jacobson* in their analysis of various pandemic responses"); *Lewis v. Walz*, 491 F. Supp. 3d 464, 470 n.5 (D. Minn. 2020) (same); *Underwood v. City of Starkville, Miss.*, No. 1:20-CV-00085-GHD-DAS, 2021 WL 1894900, at *5 (N.D. Miss.) (declining to apply *Butler*); *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 753 (E.D. Cal. 2020) (same); *see also M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 246 (M.D. Pa. 2020) (rejecting *Butler* because "[t]he bottom line for our purposes is that *Jacobson* is controlling precedent until the Supreme Court or Third Circuit Court of Appeals tell us otherwise"); *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 775 (W.D.N.Y. 2020) ("until the Supreme Court overrules *Jacobson*, it remains good law, and it governs here.").

In any event, the reasoning in *Butler* is unpersuasive. Moreover, and most importantly for me, to adopt plaintiffs' contentions would be to disregard the Sixth Circuit's decision in *Independent League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 128 (6th Cir. 2020) Aside from the compelling persuasiveness of the Circuit's reasoning and rationale, *that* is a decision I am bound as a District Court Judge to follow. Plaintiffs devote much of their brief to arguing that *Jacobson* has been limited, is no longer good law, or is distinguishable on its facts. *See* (Doc. 36, pgID 368-72). Those efforts are wasted. It is simply not necessary to rely on *Jacobson*'s standard to resolve this case because the complaint also fails under the more modern

(Footnote continued on next page)

### (i)  Plaintiffs' Due Process and Equal Protection
### Claims Are Subject to Rational Basis Review

Plaintiffs argue I must apply strict scrutiny to their denial of the right to work and equal protection claims. For the reasons that follow, that contention is meritless.[11]

First, in support of their substantive due process claim, plaintiffs mistakenly argue that strict scrutiny review applies. They claim this is so because, they assert, the right to work is a fundamental right. They are mistaken.

In support of their assertion, plaintiffs offer only a Supreme Court opinion in which the Court actually applied rational basis scrutiny. (Doc 36, pgID 366) (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938)). In a footnote, the Court speculated in dictum that "there may be a narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten Amendments." *Caroline Prods., supra*, 304 U.S. at 152 n.4. The Court then expressly declined to consider the issue. In addition, nowhere in that dictum did the Court discuss a right to work.

---

rational basis standard. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, --- U.S. --,141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring); *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 744 (M.D. Tenn. 2021). Accordingly, I will not rely on *Jacobson's* standard as a basis for my decision.

In any event, as I read plaintiffs' complaint, they are not in this case challenging the constitutionality of the Health Director's authority to issue her closure orders. Instead, they challenge the constitutionality of the consequences of those orders on the plaintiffs. Thus, *Jacobson* has little, if anything, to do with this case.

[11] In their brief, plaintiffs assert (without citation or explanation) that defendants violated their right to freedom of association. (Doc. 36, pgID 366). Their complaint, however, does not mention a right of freedom of association. Instead, it specifically alleges that each plaintiff "was deprived of his [or her] right to work." (Doc. 1, pgID 8-10). I will not address a claim that the complaint does not state.

Although the law recognizes "some generalized due process right to choose one's field of private employment," it is not a fundamental right; instead it is subject to "reasonable government regulation." *Conn*, *supra*, 526 U.S. at 291-92; *accord Lawrence v. Pelton*, No. 20-2011, 2021 WL 1511664, at * 4 (6th Cir.); *Proctor v. Krzanowski*, 820 F. App'x 436, 439 (6th Cir. 2020); *see also Prynne v. Settle*, 848 F. App'x 93, 104 (4th Cir. 2021) ("There is no broadly defined fundamental right to work.").[12] Even the decision in *Cnty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 920-21 (W.D. Pa. 2020), on which the plaintiffs rely heavily, held that the right to work is not a fundamental right. In the absence of a fundamental right, government action is subject only to rational basis review. *See id.*; *Blau v. Fort Thomas Public Sch. Dist.*, 401 F.3d 381, 393 (6th Cir. 2005).

Second, plaintiffs' equal protection claim requires them to show the health Director's challenged orders "treat[ed] one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, supra*, 313 F. App'x at 836. For the same reasons that their substantive due process claim failed under rational basis scrutiny, plaintiffs' equal protection claim fails because they cannot show that the orders treated them differently than other, similarly situated business owners without a rational basis for doing so.

### (ii)  Rational Basis Review

Plaintiffs assert that the Health Director's orders lacked a rational basis because "[d]ata shows that intentionally misleading information being is [sic] to invalidate Constitutional rights

---

[12] Moreover, "Supreme Court cases finding a cognizable liberty right 'all deal with a complete prohibition of the right to engage in a calling,' not a 'brief interruption' of the right." *Proctor, supra*, 820 F. App'x at 439 (quoting *Gabbert, supra*, 526 U.S. at 291-92). Here, the government closed plaintiffs' studios for a total of three months. It then permitted them to open again subject to certain safety regulations, such as social distancing. There has not been a complete prohibition of plaintiffs' ability to practice their professions.

under the guise of public health." (Doc. 36, pgID 371). Apart from the inadequacy of that

conclusory pronouncement under *Iqbal* and *Twombly*, it also reflects a fundamental

misunderstanding of the law.

As the Sixth Circuit has explained,

> to pass rational-basis scrutiny, ordinances need not be supported by
> scientific studies or empirical data; nor need they be effective in
> practice. Rather, [i]t is enough that there is an evil at hand for
> correction, and that it might be thought that the particular legislative
> measure was a rational way to correct it . . . . [W]e will be satisfied
> with the government's rational speculation' linking the regulation to
> a legitimate purpose . . . .

*Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 614 (6th Cir. 2010) (citations and internal

quotation marks omitted).

"Thus, if a [government action] can be upheld under any plausible justification offered by

the state, or even hypothesized by the court, it survives rational-basis scrutiny." *Am. Express

Travel Related Servs. Co v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011). The defendant "has no

obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively

valid and may be based on rational speculation unsupported by evidence or empirical data."

*Taylor Acquisitions, supra*, 313 F. App'x at 836. Instead, "the party challenging [a government

action] must 'negate every conceivable basis which might support it." *Am. Express, supra*, 641

F.3d at 690 (internal quotation marks omitted).

"Under this test, [government] action 'is not subject to courtroom fact-finding and may

be based on rational speculation unsupported by evidence or empirical data.'" *League of Indep.

Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 128 (6th Cir. 2020) (quoting

*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993)). "In fact, '[t]he assumptions

underlying these rationales may be erroneous, but the very fact that they are "arguable" is

sufficient . . . ." *Tiwari v. Friendlander*, No. 3:19-CV-00884-GNS-CHL, 2021 WL 1407953, at

*6 (W.D. Ky.) (quoting *Beach Commc'ns, Inc., supra*, 508 U.S. at 315).

"Ultimately, 'litigants may not procure invalidation of [administrative orders] merely by

tendering evidence in court that the [government official] was mistaken.'" *Id.* (quoting

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). "Shaping the precise

contours of public health measures entails some difficult line-drawing. Our Constitution wisely

leaves that task to officials directly accountable to the people." *League of Indep. Fitness

Facilities, supra*, 814 F. App'x at 129.

Thus, plaintiffs' vague reference to data and their bald assertion that Covid-19 "can now

be shown to be roughly as dangerous as the yearly flu," (Doc. 1, pgID 7), entirely miss the point.

Whether plaintiffs' view of this unidentified data may be superior to the government actor's view

simply is not at issue here.

There is no question that responding to the Covid-19 pandemic represents a legitimate

government interest. *Roman Catholic Diocese of Brooklyn v. Cuomo*, --- U.S.---, 141 S. Ct. 63,

67 (2020); *see also Neinast v. Bd. of Trs.*, 346 F.3d 585, 592 (6th Cir. 2003) (recognizing public

health and safety as legitimate government interests).

The Health Director's orders were rationally related to fighting the spread of Covid-19.

Dance studios bring dancers together in an environment that plaintiffs concede makes social

distancing impracticable. Like the fitness facilities the Sixth Circuit addressed in *League of

Indep. Fitness Facilities,* dance studios are a place where people engage in "heavy breathing and

sweating in an enclosed space containing many shared surfaces." 814 F. App'x at 129.

Preventing that activity is rationally related to the effort to minimize the harm from a pandemic

that infects people through airborne droplets.

Whether the plaintiffs believe that effort is unnecessary or ineffectual simply is not relevant to rational basis review. So long as a court finds it plausible that the government's action "might be thought . . . a rational way to protect" against the threatened danger, the action does not violate due process. *Sheffield, supra*, 620 F.3d at 614. The Health Director's orders at issue easily meet that standard. Accordingly, plaintiffs' substantive due process claim must be dismissed.

Similarly, plaintiffs' equal protection claim fails because plaintiffs cannot show that Director Acton did not have a rational basis for treating dance studios differently from businesses that do not require clients to exercise vigorously in close proximity to one another in enclosed spaces.

In addition, plaintiffs' equal protection claim fails because of a basic pleading deficiency.

It is fundamental that, to state a claim for equal protection, the plaintiff must allege disparate treatment. *WCI Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 963 (6th Cir. 2019) ("'The threshold element of an equal protection claim is disparate treatment; . . .'" (quoting *Dixon v. Univ. of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012))); *Ctr. for Bio-Ethical Reform, Inc. v. Napalitano*, 648 F.3d 365, 379 (6th Cir. 2011) (same). Specifically, a plaintiff must plead disparate treatment as compared to similarly situated persons. *Ctr. for Bio-Ethical Reform, supra*, 648 F.3d at 379. A plaintiff "'must allege that it and other individuals who were treated differently were similarly situated in all material respects.'" *Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018) (quoting *Taylor Acquisitions*, *supra*, 313 F. App'x at 836).

Plaintiffs have failed to allege any facts that would show that the essential businesses that Ohio allowed to remain open were similarly situated to their dance studios. Indeed, the closest

they come to alleging that defendants treated similarly situated parties differently comes in the introduction to their complaint, where they make the conclusory allegation that "businesses were treated differently without even a rational basis for such actions." (Doc. 1, pgID 7). They do not mention the issue again in the equal protection count in their complaint.

"[B]are allegations that 'other' [enterprises], even 'all other' [enterprises], were treated differently' is insufficient; a plaintiff must show that these 'other' [enterprises] were similarly situated to the plaintiff." *Taylor Acquisitions, supra*, 313 F. App'x at 836 (internal quotation marks omitted). It is plaintiffs' burden to plead facts that would allow me to find that defendants treated them unequally to similarly situated business owners. *Wymer v. Richland Cnty. Children Servs.,* 584 F. App'x. 283, 284 (6th Cir. 2014).

However, plaintiffs fail to allege that the Health Director allowed some dance studios to remain open. Indeed, they fail to allege that the directors allowed other enterprises such as gyms or fitness centers to continue operating. Those who participate in such activities, like dance studio participants, typically engage in strenuous physical activity in close proximity to others doing likewise. Thus, gyms and physical fitness centers are comparable to dance studios.

Plaintiffs do not show that such non-essential enterprises, which, like dance studios, would be likely venues for the spread of Covid-19, remained open under Director Acton's regime. Nor do they allege that the essential enterprises the Ohio Health Director's orders allowed to remain open are similarly situated to their dance studios. Therefore, they have failed adequately to plead the essential equal protection element that Director Acton's orders treated similarly situated businesses more favorably than plaintiffs' dance studios.

### (iii)  Equal Protection Did Not Require the Orders Themselves to Explain the Basis for Distinguishing Between Essential and Non-Essential Businesses

22

Plaintiffs also argue that the orders violate equal protection because they do not state Director Acton's standard for determining which businesses qualified as essential. That argument, too, is meritless

First, it is not true that the Health Director provided no explanation for how she divided businesses between essential and not. The March 20, 2021 order explains regarding the businesses it closed:

> These businesses encourage congregation in indoor spaces where the virus that causes COVID-19 can easily spread from person to person. Persons can also be exposed to the virus by touching a surface or object that has the virus on it and then touching their own mouth, nose, or eyes.

(Doc. 20-1, pgID 157).

Second, there is no obligation for the Health Director's orders themselves to explain the bases for classifying businesses as essential. "The rational basis justifying a statute against an equal protection claim need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction." *United States v. Dunham*, 295 F.3d 605, 611 (6th Cir. 2002) (quoting *Estate of Kunze v. Comm'r of Internal Revenue,* 233 F.3d 948, 954 (7th Cir. 2000)). Governmental actors are presumed to have acted constitutionally "even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them." *McDonald v. Bd. of Election Comm'rs,* 394 U.S. 802, 809 (1969).

Third, as the Sixth Circuit has explained, "[a] proffered explanation for the statute need not be supported by an exquisite evidentiary record; rather we will be satisfied with the government's 'rational speculation' linking the regulation to a legitimate purpose, even 'unsupported by evidence or empirical data.'" *Craigmiles, supra*, 312 F.3d at 224 (quoting

*Beach Commc'ns, Inc., supra*, 508 U.S. at 313). The Health Director's explanations are "paradigmatic example[s] of "rational speculation" that fairly supports the [Director's] treatment of [dance studios]." *League of Indep. Fitness Facilities, supra*, 814 F. App'x at 129.

Here, I need not rely on the "reasonable speculation" standard because the Centers for Disease Control and Prevention have explained the scientific basis for not allowing people to congregate, let alone to exercise, in enclosed spaces.[13]

Thus, plaintiffs' substantive due process and equal protection claims fail to state a claim upon which relief can be granted.

### B.  Takings Clause

Plaintiffs' third count alleges that the Health Director's orders constituted a taking without just compensation in violation of the Fifth Amendment. The Takings Clause provides in full: "nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V. Thus, "[t]he [Takings] [C]lause does not entitle all aggrieved owners to recompense, only those whose property has been taken for a public use." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1152 (Fed. Cir. 2008).

The Sixth Circuit has explained the basic fallacy in plaintiffs' attempt to treat a health-related order issued under the police power as a taking.

> [Plaintiffs] fail[] to recognize that the law distinguishes between a taking for public use under the government's power of eminent domain, which is civil in nature, and the forfeiture of property under the government's police power, which is criminal in nature. *See AmeriSource v. United States,* 525 F.3d 1149, 1152–57 (Fed. Cir. 2008). While the former is subject to the Fifth Amendment, the latter is not because "the [g]overnment's seizure and retention of property under its police power does not constitute a 'public use.' " *Innovair Aviation Ltd. v. United States,* 632 F.3d 1336, 1341 (Fed. Cir. 2011) (citing *AmeriSource,* 525 F.3d at 1152–

---

[13] *See, e.g.*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

57). This rule does not admit of any exceptions.

*United States v. Droganes*, 728 F.3d 580, 591 (6th Cir. 2013).

Where a state "reasonably conclude[s] that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land," the state is not required to provide just compensation to the citizens affected by the regulation. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978); *see also Lech v. Jackson*, 791 F. App'x 711, 719 (10th Cir. 2019) ("[S]o long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment.") (quoting *Amerisource Corp., supra*, 525 F.3d at 1154-55)).

The Health Director did not take plaintiffs' properties for public use through eminent domain. Instead, she acted to protect public health through the police power. "It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 476 (1996)); *see also TJM 64, Inc. v. Harris*, No. 2:20-CV-02498-JPM-TMP, 2021 WL 863202, at *3 (W.D. Tenn.) (applying the principle to covid-related closure of certain kinds of restaurants). Plaintiffs' takings claim fails on this basis alone.

Plaintiffs' takings claim also fails because plaintiffs have failed to allege facts that would support their conclusory assertion that the Health Director's orders deprived them of "all beneficial use of their property." (Doc. 1, pgID 7). A regulatory taking only occurs in "'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002) (emphasis in original) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017 (1992)).

The only allegations that plaintiffs make related to this requirement are repetitive and conclusory. They allege that they "were denied all beneficial use of their property," were "deprived [] of any and all beneficial use of these businesses," and "they have been deprived of all economically beneficial use of their property." (*Id.*, pgID 7, 14, 22).

These are exactly the kind of "[t]hreadbare recitals of the elements of a cause of action" that courts consistently have found insufficient to state a claim. *Iqbal*, *supra*, 556 U.S. at 678. And plaintiffs do not allege any facts to support these bald assertions. The absence of any factual allegations to support the basic element of a regulatory takings claim – that the Health Director's orders deprived them of all beneficial uses of their property – also requires the dismissal of their takings claim

### C.  All Defendants Are Immune to Monetary Liability

### (i)  11th Amendment Immunity

It is basic law that the Eleventh Amendment bars a suit for damages against a State or official of the State in federal court. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997); *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009).[14] "'An official can . . . be sued in his *official* capacity. But an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver . . . .'" *Cady, supra*, 574 F.3d at 344 (emphasis in original) (quoting *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)). This is because a plaintiff who sues a state agent in his or her official capacity "seeks

---

[14] Plaintiffs named Ohio as a defendant in its case caption, (Doc. 1, pgID 3) and have served it with process. (Doc. 14). Nevertheless, they left Ohio out in the list of entities they designated collectively defined as the "Defendants," (Doc. 1, pgID 10-13), and have failed to allege any conduct by the State or any factual basis on which they seek to hold the State liable. Moreover, a plaintiff may not sue a state for damages in federal court. *Regents, supra*, 519 U.S. at 430. Accordingly, I dismiss all claims against Ohio.

damages not from the individual officer, but from the entity for which the officer is an agent." *Id.* at 342.

Ohio has not waived its sovereign immunity from civil rights lawsuits in federal court. *Regenold v. Ohio State Bd. Of Educ.*, No. 2:21-CV-1916, 2021 WL 2895130, at *3 (S.D. Ohio) (citing *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999)). And "Congress did not abrogate states' Eleventh Amendment immunity through § 1983." (*Id.*) (citing *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).

Nevertheless, plaintiffs seek monetary damages from state defendants Governor DeWine, Amy Acton, Stephanie McCloud, and Lance Himes in their official capacities. (Doc. 1, pgID 3, 10). Plaintiffs' sole explanation for those claims in their brief is to declare baldly that "[t]he 11th Amendment has no legitimate application to immunize Defendants from the claims of the Plaintiffs and cannot be successfully asserted and raised by any Defendant against the Plaintiffs' claims." (Doc. 36, pgID 372). That response reflects, not surprisingly, that plaintiffs are unable to provide any authority to support their novel assertion. To the extent plaintiffs seek monetary damages against these state officials, their claim is frivolous and must be dismissed.

The Eleventh Amendment also bars plaintiffs' claims for monetary damages against the city and county Health Directors.

Ohio statute unambiguously mandates that a city or county Health Director "shall" enforce quarantine and isolation orders, and the rules the department of health adopts." O.R.C. § 3709.11. When an Ohio city or county official is carrying out orders of the Health Director, he or she is acting as an arm or officer of the state and is entitled to immunity from suit under the Eleventh Amendment. *See Cady, supra*, 574 F.3d at 343 (the county prosecutor was acting "as a

state agent when prosecuting state law criminal charges"); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (a city official is considered a state agent when enforcing state law).

Moreover, when government actors "are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999); *See also Ermold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019) (county clerk who acted pursuant to statute stating that she "shall" take certain action was immune to official capacity suit because she acted as state agent).

Accordingly, the Eleventh Amendment serves as additional grounds for dismissing all claims against the defendants in their official capacities for monetary damages.

### (ii) Qualified Immunity

Defendants contend that the plaintiffs' claims are barred by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). For a state actor to be liable, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

When the Health Director issued the orders in question, *Jacobson* endorsed the constitutionality of her having done so. Moreover, as discussed *supra*, Section 3(A)(i), even apart from the *Jacobson* standard, the basic rules of rational basis review amply support those orders.

Thus, under the binding precedent, it is simply irrational to assert that a reasonable health official would have known that imposing business closings in response to a pandemic clearly

violated Supreme Court precedent. The numerous decisions upholding such orders clearly demonstrate that a reasonable person in the Health Director's position would not have "known" that enacting the orders at issue here would violate the law.[15] *See, e.g.*, cases cited *supra* n.10.

Plaintiffs' sole response to defendants' qualified immunity defense is to declare, without citation or explanation, that "[d]efendants knew or should have known the well established law that prevented their unconstitutional behaviors." (Doc. 1, pgID 362). That is no argument at all, but merely a conclusion without explanation, citation, or supporting factual allegations.

Plaintiffs' claim that defendants are not entitled to qualified immunity is meritless. Qualified immunity requires that I dismiss all monetary claims against all defendants.

### 4.  Violations of Ohio's Law

Plaintiffs' complaint makes numerous allegations that the defendants violated the Ohio Constitution, (Doc. 1, pgID 6, 13, 14, 22), Ohio statute, (*id.*, pgID 16-17), and Ohio caselaw, (*id.*, pgID 19-20, 22). Plaintiffs fail, however, to relate those allegations to any of their counts or even to mention them in any of the counts, with only one exception. In the complaint's last paragraph

---

[15] Plaintiffs seek to rely on *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 488 (6th Cir. 2014), for the proposition that in "rare situations . . . the unconstitutionality of the application of a statute to a situation is plainly obvious" so that "no reasonable police officer would believe" applying the law to the facts would be constitutional. (Doc. 36, pgID 372). That case does not support plaintiffs' argument. The court's statement that such rare situations may exist provides no support for plaintiffs' suggestion that this is one of them. Nor does their complaint adequately so allege.

Moreover, *United Pet Supply* is inapposite. First, the case did not involve public health measures during a health emergency. During such an emergency and to the extent that the *Jacobson* doctrine has any applicability, it mandates deferential review. As discussed above, plaintiffs also cannot meet the standards for rational basis review.

Second, the case involved the permanent cancellation of a business license. *United Pet Supply, supra*, 768 F.3d at 488. The Health Director's orders that plaintiffs challenge here imposed only temporary restrictions, which the Health Director subsequently relaxed as she determined the circumstances justified.

before the prayer for relief, plaintiffs throw in a vague, passing reference to the Ohio

Constitution: "Defendants [sic] seek a Declaratory Judgment that the Defendants . . . interfered

with their rights to free expression under the 1st & 14th Amendments and the Ohio Constitution."

(*Id.*, pgID 22).

That vague reference would be insufficient in any event, but here, it again reflects a

failure of counsel to learn the basic legal principals governing their claims. "Case law is legion

that the Eleventh Amendment to the United States Constitution directly prohibits federal courts

from ordering state officials to conform their conduct to state law." *Johns v. Supreme Court of

Ohio*, 753 F.2d 524, 526 (6th Cir. 1985). Section "1983 does not provide a remedy

for violations of state law. Rather, the statute's reach is 'limited to deprivations of federal

statutory and constitutional rights.'" *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346

F.3d 585, 597 (6th Cir. 2003) (quoting *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d

710, 714 (6th Cir. 1989)); *see also McCarthy v. City of Cleveland,* 626 F.3d 280, 283 n.1 (6th

Cir. 2010) ("The violation of a provision of state law is not cognizable under § 1983.").

To the extent plaintiffs seek relief for violation of Ohio law, their claim is frivolous and

must be dismissed.

### 5.  Plaintiffs' Failure to Respond to Defendants' Arguments

Defendants have raised in their motions the deficiencies in plaintiffs' complaint that I

have identified above. They supported their arguments with valid citations and reasoned

analyses. Plaintiffs' fourteen-page "Consolidated Brief in Opposition" fails entirely to respond

substantively to those citations or analyses.

The defendants raised the pleading deficiencies discussed above. Plaintiffs' response was

simply to declare that their "Complaint is proper and sufficiently pled in all respects to present

the Plaintiffs' claims." (Doc. 36, pgID 361). Obviously, that declaration itself carries no weight. The only pleading deficiency plaintiffs attempted to address in any substance is the defendants' argument that they failed to plead adequately that they suffered loss. (*Id.*, pgId 365).

Most notably, plaintiffs declined to respond substantively to defendants' argument that the complaint failed to identify any action by any defendant other than Director Acton. At most, plaintiffs simply fault the defendants for not objecting to the Health Director's orders. (*Id.*, pgID 362). As discussed above, that response is entirely meritless.

Plaintiffs also repeat in their opposition, (*id.*, pgId 367), their complaint's sweeping assertion that the city and county Health Directors enforced Ohio Health Director Acton's orders. (Doc. 1, pgId 15). Plaintiffs do not respond to defendants' argument that they failed to identify any action that any individual defendant took to enforce the orders. As discussed above, plaintiffs' bald assertion is woefully inadequate to plead a claim against any of the defendants other than Director Acton.

Defendants' briefs pointed out that plaintiffs' failure to identify harmful conduct by each individual defendant meant that they had failed to allege grounds on which they had standing to sue each defendant.

As to two of those defendants, Melissa Howell and Kate Siefert, plaintiffs ultimately withdrew their claims. They did so, however, only after those defendants pointed out in their motions that plaintiffs had made no allegation that any of them were subject to those defendants' health districts' jurisdiction. The time to determine whether plaintiffs had standing to sue each defendant – that is, whether each defendant took, or even had the jurisdiction to take, any action against them – was before plaintiffs served their complaint.

As to the remaining defendants other than Director Acton, plaintiffs' response to defendants' standing arguments was to repeat the same wholly inadequate allegation that the "Defendants" had failed to object to Director Acton's orders. They also repeated the conclusory allegation that the city and county defendants threatened to enforce Director Acton's orders. Rather than identify any action that any individual defendant other than Director Acton took to enforce those orders, they assert the untenable claim that city and county Health Directors' posting Ohio's Health Director's orders on their websites somehow was actionable conduct. As discussed above, it was not.

Moreover, while plaintiffs expounded at length on their own interpretation of *Jacobson*, they failed to respond to the defendants' argument that the Health Director's orders pass rational basis review. That is, other than just declaring that "[t]here is no rational basis for the orders." (Doc. 36, pgID 365).

Instead, plaintiffs chose to rely solely on their frivolous claim that the right to work is a fundamental right subject to strict scrutiny. As discussed above, any reasonable investigation would have taught plaintiffs that it is not. Thus, plaintiffs failed even to respond to defendants' arguments regarding the legal standard that plainly governs their claims.

In addition, after defendants informed plaintiffs through their motions that the right to pursue a chosen profession is not a fundamental right and is not subject to strict scrutiny, plaintiffs attempted to change their claim by arguing about their right to free association. (*Id.* pgID 366). If plaintiffs wished to amend their complaint to state a claim for violation of the right to free association, they should have sought leave to do so. They cannot amend their complaint in a brief opposing a motion to dismiss.

Defendants also pointed out to plaintiffs that they had failed to allege the basic element of an equal protection claim that the Health Director's orders treated similarly situated persons differently. Plaintiffs' response is to declare baldly that defendants had violated their right to equal protection because "[a]ll businesses were not treated equally under the orders." (*Id.*, pgID 368). They do not even attempt to argue that all or any of the businesses designated essential were similarly situated to their own even after defendants pointed out to them that such an allegation is an essential element of an equal protection claim.

Instead, they cite to Ohio law relating to the Ohio Constitution's protection of the right to property as an unalienable right. (*Id.*, pgID 367). They did so even after the defendants pointed out to them the basic rule that they cannot sue state officials in federal court for violating state law.

As to their takings claims, defendants pointed out to plaintiffs that a takings claim arises only when property is taken for public use and only when the government destroys all economically beneficial use of the property. Defendants pointed out that the complaint fails to plead either. Plaintiffs' sole response was to state baldly that the orders deprived them of all economically beneficial use of their properties without any supporting factual allegations or analysis. *See* (*Id.*, pgID 368). They failed to address the public use requirement altogether.

Defendants also explained to plaintiffs in their motions that it is absurd to claim, as plaintiffs do, that the Health Director's orders were so clearly unconstitutional that their unconstitutionality would have been "plainly obvious" to any reasonable public health official. (*Id.*, pgID 372). Although defendants provided plaintiffs with ample citation to cases holding that orders like those at issue here are constitutional, plaintiffs simply responded by stating, without relevant case support or meaningful analysis, that I should deny defendants qualified immunity

33

because it should have been obvious to them that the orders were unconstitutional. The fact that so many courts have upheld similar orders simply precludes any non-frivolous argument that a reasonable public health official would have known those cases are mistaken. Moreover, they are not.

Defendants also explained to plaintiffs that suing officials in their official capacity for damages actually means suing for payment from the State Treasury, which the Eleventh Amendment forbids. Characteristically, plaintiffs' sole response is to say that "[t]he 11th Amendment has no legitimate application" to defendants without providing any meaningful citation or analysis. (*Id.*)

Defendants also pointed out to plaintiffs that they had failed to allege facts in the complaint to establish standing to sue. Nevertheless, plaintiffs barely address standing in their opposition brief. They do not respond to any of defendants' specific arguments regarding standing, let alone cite to any cases or allegations in the complaint that they believe establish standing. Their entire response is four sentences long and consists only of conclusory assertions.

Plaintiffs had the obligation to conduct a reasonable investigation of the legal basis for their claims before they filed the complaint. *See* Fed. R. Civ. P. 11. At the very least, they were obligated to learn if they had a factual basis for asserting standing to sue each of the twenty defendants they named. They also were obligated, at a minimum, to learn the basic elements of their claims before filing them.

Perhaps even worse, however, is their failure to change course when the defendants explained to them the obvious and fundamental deficiencies in their complaint and provided them with reasoned analysis and extensive legal authority. The plaintiffs' proper response would

have been to seek leave to file an amended complaint to correct those deficiencies or to drop some parties and/or claims altogether.

Instead, they opposed the motions to dismiss without any reasoned response or relevant authority to address the errors the defendants had identified to them. By doing so, they forced the defendants to file additional briefs without justification and wasted a significant amount of my own time and resources to resolve motions to dismiss a complaint that they reasonably should have known could not possibly pass muster.

### Conclusion

For the multiple and manifold reasons that I have discussed, this suit and plaintiffs' complaint were as hapless as they were hopeless. Plaintiffs utterly ignored basic pleading principles from *Iqbal* and *Twombly*.

I could have justified dismissal on that basis alone. But, given the deficiencies in light of well-established black-letter law that permeated every facet of plaintiffs' putative claims, I have made clear that, in the alternative, dismissal is well warranted because plaintiffs lack standing, their alleged substantive claims are entirely without any plausible merit, and basic immunity doctrines bar plaintiffs' claims for monetary recovery.

Dismissal thus rests on indisputable bedrock procedural and substantive grounds.

That being said, I leave it to the defendants and their attorneys to determine whether they desire to seek sanctions under Fed. R. Civ. P. 11, 18 U.S.C. § 1927, or this court's inherent power. If any party desires to pursue such a remedy on any or all of such grounds, I hereby grant leave to them to do so in accordance with the schedule set forth below.

In light of the foregoing, it is hereby ORDERED THAT:

1.  Defendants' Motions to Dismiss (Docs. 24-27, 32) and defendant Zgodzinski's Motion for Judgment on the Pleadings (Doc. 21) be, and the same hereby are, granted;

2.  Plaintiffs' complaint against each and every defendant be, and the same hereby is, dismissed with prejudice; and

3.  Any party seeking, on any grounds, to recover, as sanctions, reasonable attorney's fees and costs incurred in the defense of this case shall, on or before November 30, 2020, file an appropriate motion and supporting memorandum; plaintiffs shall respond on or before January 10, 2022; and defendants shall reply on or before January 30, 2022. Any party seeking or opposing a hearing on any such motion shall so indicate, and such request, and if filed, such opposition, shall be taken under advisement.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge