IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERica BOJICIC, et al.,            Case No. 3:21-cv-00630-JGC

    Plaintiffs,

v.                               **ORDER**

MICHAEL DEWINE, et al.,

    Defendants.

This order relates to a claim under 42 U.S.C. § 1983 that I previously dismissed as frivolous and without merit. *Bojicic v. DeWine*, 569 F. Supp. 3d 669 (N.D. Ohio 2021).

The remaining Defendants in this case are all directors or commissioners of various county and municipal health departments. *Bojicic v. DeWine*, No. 21-cv-00630, 2024 WL 365116, at *1 n.1 (N.D. Ohio Jan. 31, 2024).

The Plaintiffs in this case are various business owners, who claimed that certain state health orders related to the Covid-19 pandemic unlawfully harmed their businesses. (Doc. 1, PgID. 8–10).

I previously granted Defendants' motions for sanctions against Plaintiffs' attorneys, Robert Gargasz and Thomas Renz ("Respondents"). *Bojicic*, 2024 WL 365116. Pending are Defendants' subsequent motions for fees and costs. (Doc. 131; Doc. 133). Respondents filed their opposition (Doc. 135), and Defendants replied (Doc. 138; Doc. 139). I allowed Respondents to file a sur-reply, and they did so. (Doc. 140).

1

Defendant Zgodzinski seeks attorneys' fees of $6,782.95 and costs of $1,385.35 in hearing transcript charges. (Doc. 131, 2144–45).[1]

The remaining Defendants seek attorneys' fees totaling $43,111 and costs totaling $5,220.20. (Doc. 139, PgID. 2354).[2] These costs include expert witness fees totaling $4,736 and hearing transcript charges of $484.20. (Doc. 133, PgID. 2162; Doc. 139, PgID. 2353–54).

For the reasons that follow, I grant Defendant Zgodzinski's motion for fees and costs in the amount of $6,782.95 in attorneys' fees and $1,385.35 in costs. I grant in part and deny in part the remaining Defendants' fee petition. I award them $42,762.30 in attorneys' fees and $5,220.20 in costs.

## **Background**

My prior orders dismissing Plaintiffs' complaint and granting Defendants' motions for sanctions detail the factual and procedural background of this matter. *Bojicic*, 569 F. Supp. 3d at 677; *Bojicic*, 2024 WL 365116, at *1–2. I highlight here those events most relevant to the pending motions and this order.

Plaintiffs' complaint alleged that certain state health orders unlawfully required Plaintiffs' businesses to suspend operations during the Covid-19 pandemic. (Doc. 1, PgID. 14–17). I dismissed Plaintiffs' complaint with prejudice, concluding that their suit and complaint

---

[1] In his motion for attorney fees and costs, Defendant Zgodzinski sought attorneys' fees of $6,782.95. (Doc. 131, PgID. 2144). In his subsequent brief replying to Respondents' opposition, however, Defendant Zgodzinski sought attorneys' fees of $6,592.06. (Doc. 138, PgID. 2341). The affidavit of Defendant Zgodzinski's counsel provides underlying figures amounting to $6,782.95 (Doc. 131, PgID. 2151–54). I therefore consider the slightly lower figure requested in Defendant Zgodzinski's reply brief to be inadvertent error.

[2] In their fee petition and statement of fees and costs, the remaining Defendants initially requested $32,697 in attorneys' fees. (Doc. 133, PgID. 2158). In support of this figure, Defendants cited the affidavits of four attorneys. (*Id.* at PgID. 2161). However, Defendants do not appear to have included the fees for Amy Herman, which amount to $775.50. (Doc. 133-4, PgID. 2203). Again, I rely on the information included in the Defendants' affidavits. I consider the slightly lower figure requested in Defendants' briefing to be inadvertent error. Including Herman's fees brings Defendants' initial request for attorneys' fees to $33,472.50. Combined with their subsequent supplemental attorneys' fees request of $9,638.50, (Doc. 139, PgID. 2353), Defendants' total request for fees is $43,111.

2

"were as hapless as they were hopeless." *Bojicic*, 569 F. Supp. 3d at 695. I also invited any party that so desired to move for sanctions, including "reasonable attorney's fees and costs incurred in the defense of this case." *Id.* at 696. Defendants did so. (Doc. 53; Doc. 54).

On January 3, 2023, Respondents filed a motion to dismiss Defendants' sanctions motions. (Doc. 99). I partially granted Respondents' motion. I dismissed "[t]he portions of defendants' motions . . . brought under Federal Rule of Civil Procedure 11(c)(2)" because Defendants failed to comply with that rule's safe harbor notice provision. *Bojicic v. DeWine*, No. 21-cv-00630, 2023 WL 2572080, at *2 (N.D. Ohio Mar. 20, 2023). Defendants' motions for sanctions under 28 U.S.C. § 1927 and the court's inherent power, as well as my own Rule 11 show-cause order, remained pending. *Id.*

After holding an evidentiary hearing, I granted the remaining portions of Defendants' sanctions motions. *Bojicic*, 2024 WL 365116, at *20. I concluded that Respondents violated both Rule 11 and § 1927. *Id.* I also ordered Defendants to "file a fee petition and statement of fees and costs on which they seek reimbursement" under § 1927. *Id.* at *21.

## Legal Standard

§ 1927 allows me to require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 "empower[s] the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006). The statute's purpose is "deterrence and punishment rather than restitution." *Id.* at 647.[3]

---

[3] Whether § 1927 permits the award of expert witness fees is unclear. *See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 17-cv-5096, 2022 WL 3701555, at *9–11 (D. Minn. Aug. 26, 2022) (discussing persuasive

3

To determine reasonable attorney's fees, I begin "by determining the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019) (internal quotations and citations omitted).

Regarding a reasonable hourly rate:

> [A] district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. A trial court, in calculating the reasonable hourly rate component of the lodestar computation, should initially assess the prevailing market rate in the relevant community. The prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. A district court is permitted to rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821–22 (6th Cir. 2013) (internal quotations and citations omitted).[4]

To assess the number of "reasonably expended" hours, "[t]he key requirement . . . is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Tile & Composition*

---

authority and considering but declining to decide the issue). I similarly decline to decide § 1927's reach in this regard because Respondents did not argue the issue. *See In re Hall*, 4 F.4th 376, 379 (6th Cir. 2021) (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)) ("[C]ourts do not typically tell counsel which positions they must take."). Respondents have waived any objection on such grounds to satisfying Defendants' expert witness fees.

[4] I may further "consider adjusting the fee based on a number of factors, the most important of which 'is the degree of success obtained.'" *Hubbell*, 933 F.3d at 575 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). At least twelve factors may be relevant to this analysis. *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 & n.8 (6th Cir. 2000) (noting that the trial judge may "adjust the lodestar to reflect relevant considerations peculiar to the subject litigation" and listing twelve factors the judge might consider (internal quotations omitted)). However, no party argues that these factors justify a deviation from the lodestar figure here.

4

*Roofers, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).

"Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified." *Id.* (internal quotations and citations omitted).[5]

### Discussion[6]

#### 1. Reasonable Hourly Rate

##### a. *Defendant Zgodzinski*

Defendant Zgodzinski seeks attorneys' fees of $6,782.95 based on an hourly rate of $63.63 for the Assistant Lucas County Prosecutor who handled the case. (Doc. 131, PgID. 2154). This rate includes the Prosecutor's hourly wage of $58.93 and the $4.70 per-hour value for fringe benefits. (*Id.* at PgID. 2153).[7]

Defendant Zgodzinski's requested rate is therefore much lower than the rate of $195 per hour, the rate at which the Lucas County Prosecutor's Office compensates outside counsel. (*Id.* at PgID. 2154). In my view, the special counsel rate paid by the Prosecutor's Office is a persuasive indicator of "the prevailing market rate in the relevant community" for the type of legal work involved here. *Waldo*, 726 F.3d at 821 (quoting *Adcock-Ladd*, 227 F.3d at 350).

---

[5] The cases I discuss above do not involve awards of attorneys' fees under § 1927. However, the standards these cases describe "are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." *Hensley*, 461 U.S. at 433 n.7 (internal quotation omitted); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence."); *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1231 (6th Cir. 1989) (concluding that the lodestar method for calculating Rule 11 sanctions would, for purposes of the rule, "provide a sufficient deterrent").

[6] With the exception of certain portions of Defendants' expert witness fees, discussed *infra,* Respondents do not dispute Defendants' other claimed costs. Having reviewed Defendants' submitted receipts, I find that those receipts support Defendants' claimed costs. Respondents have waived any further objection to them.

[7] Respondents do not dispute the reasonableness of either Defendant Zgodzinski's or the remaining Defendants' requested hourly rates. Respondents instead focus their arguments on whether Defendants "reasonably expended" those hours, (*see* Doc. 135; Doc. 140), an issue I discuss further below. I nevertheless engage in the following analysis of Defendants' requested rates because it is ultimately "for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433.

Defendant Zgodzinski also identified persuasive prior precedent regarding reasonable hourly rates for the region. (Doc. 131, PgID. 2147). For example, in *Adkins v. Commissioner*, 393 F. Supp. 3d 713 (N.D. Ohio 2019) (Carr, J.), I concluded that $185 per hour was a reasonable rate for attorneys' fees sought under the Equal Access to Justice Act. *Id.* at 721. In another case seeking attorneys' fees under the Employee Retirement Income Security Act, my colleague concluded that $250 per hour was reasonable for the Toledo area. *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (Katz, J.).

The Assistant Prosecutor, who handled the case for Defendant Zgodzinski, has substantial legal experience. He has held a license to practice law in Ohio since 1988 and has served as a county prosecutor since October 2005. (Doc. 131, PgID. 2151). As a sample of the Assistant Prosecutor's experience, his affidavit listed six cases he litigated between 2001 and 2021. (*Id.* at PgID. 2152). And it appears he handled the bulk of this case's legal work himself with limited supervisory oversight. (*See id.* at PgID. 2154).

The above considerations, which Respondents do not dispute, lead me to conclude that Defendant Zgodzinski's requested hourly rate of $63.63 is extremely reasonable. Indeed, the evidence Defendant Zgodzinski presents suggests that rate might be too low. But Defendant Zgodzinski did not request a further upward adjustment, *see supra* note 4, and I decline to make one on my own motion.

### b. Remaining Defendants

The remaining Defendants seek attorneys' fees totaling $43,111 based on a rate of $185 per hour for partners and $165 per hour for associates. (Doc. 133, PgID. 2160). In support of those rates, Defendants submitted: (1) attorney affidavits describing each attorney's level of experience (Doc. 133-2; Doc. 133-3; Doc. 133-4; Doc. 133-5; Doc. 134); (2) an expert's report

attesting to the reasonableness of Defendants' fees (Doc. 133-1); and (3) awards in past cases (Doc. 133, PgID. 2160–61). Respondents again do not dispute the reasonableness of the hourly rate requested by Defendants.

Based on their affidavits, the two partners, who represented Defendants, had substantial civil litigation experience involving public entities and defense of § 1983 claims. (Doc. 133-2, PgID. 2172–75 (Frank Scialdone affidavit); Doc. 134, PgID. 2213 (David Smith affidavit)).

The associate attorneys claim similar experience regarding public entity litigation. (Doc. 133-2, PgID. 2192 (Alyssa Keene biography); Doc. 133-3, PgID. 2196 (Amily Imbrogno affidavit); Doc. 133-4, PgID. 2203 (Amy Herman affidavit); Doc. 133-5, PgID. 2207 (Edmond Jaber affidavit)). Also, no associate appears to have had substantially less than five years of legal experience at the time this litigation began. (*See* Doc. 133-2, PgID. 2192 (Keene biography); Doc. 133-3, PgID. 2196 (Imbrogno affidavit); Doc. 133-4, PgID. 2203 (Herman affidavit); Doc. 133-5, PgID. 2207 (Jaber affidavit)).

I find, however, the cases that Defendants and their expert rely on for support of their requested rate less persuasive than the actual experience of the attorneys who worked on the case. Only one case involves a finding of a reasonable rate in the Toledo area. *Mikolajczyk*, 499 F. Supp. 2d at 965 (finding that $250 per hour was a reasonable rate for a claim of attorneys' fees under the Employee Retirement Income Security Act). The others relate to proceedings either at other venues within the Northern District or within the Southern District of Ohio. (Doc. 133, PgID. 2160–61 (citing cases decided in Cleveland, Columbus, and Youngstown); Doc. 133-1, PgID. 2170 (citing a case decided in Akron)).

Such a survey of surrounding venues may provide helpful context. However, my ultimate task is to establish the "rate which lawyers of comparable skill and experience can reasonably

expect to command *within the venue of the court of record*." *Waldo*, 726 F.3d at 821 (emphasis added) (quoting *Adcock-Ladd*, 227 F.3d at 350). As my discussion of Defendant Zgodzinski's requested rate suggests (*supra*), most helpful in this regard are prior cases decided in Toledo.

Nevertheless, relying on the attorney affidavits, the uncontested opinion of Defendants' expert, relevant prior precedent, and my own knowledge and experience, I conclude that Defendants' requested hourly rates of $185 for partners and $165 for associates are reasonable.

## 2. Hours Reasonably Expended

### a. Defendant Zgodzinski

Respondents raise two issues regarding whether counsel for Defendant Zgodzinski "reasonably expended" the hours claimed.

### i. Multiplication of Litigation Under § 1927[8]

Respondents argue that Defendant Zgodzinski should not receive attorneys' fees for time spent on those parts of the litigation that did not result from Respondents' "'multiplication' of the proceedings as required under 28 U.S.C. § 1927." (Doc. 135, PgID. 2217). Respondents specifically contest: (1) time spent on the litigation prior to the filing of Respondents' opposition to Defendants' motion to dismiss (Doc. 135, PgID. 2220) and (2) time spent seeking sanctions against Respondents and addressing related issues after Defendants prevailed. (Doc. 135, PgID. 2219; Doc. 140, PgID. 2372).

Respondents' arguments are both meritless.[9]

---

[8] Respondents also object to the other Defendants' claimed fees on this ground. (Doc. 135, PgID. 2222–23; Doc. 140). My reasoning and decision in this section apply with equal force to that objection.

[9] Of note, Respondents cite no support for their propositions. Indeed, Respondents cite no prior precedent in their briefing related to these motions until the second-to-last page of their sur-reply. (Doc. 140, PgID. 2373). The citations there shed little further light on any of Respondents' arguments here.

Sixth Circuit law is clear. "When a filing is entirely baseless, sanctionable conduct causes every expense reasonably incurred in responding to it." *King v. Whitmer*, 71 F.4th 511, 532 (6th Cir. 2023); *see Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) ("Since we agree with the magistrate judge that [plaintiff attorney's] unreasonable and vexatious behavior began with the filing of the complaint and persisted throughout the pendency of the case, the magistrate judge did not abuse his discretion by awarding the full amount of attorney fees . . . .").

In my order granting Defendants' motions for sanctions, I found that "Respondents did not conduct any meaningful legal research in preparing the Complaint." *Bojicic*, 2024 WL 365116, at *20. In other words, Respondents' complaint was entirely baseless. I will therefore award attorneys' fees for time spent responding to it even prior to Respondents' filing of their opposition to Defendants' motions to dismiss.

I will also grant attorneys' fees for time spent seeking sanctions against Respondents. Once again, Sixth Circuit law is clear. "The time, effort, and money a party must spend to get another party sanctioned realistically is part of the harm caused by that other party's wrongful conduct." *Whitmer*, 71 F.4th at 532 (quoting *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010)).

Admittedly, Respondents partially succeeded on their motion to dismiss Defendants' motions for sanctions. *Bojicic*, 2023 WL 2572080, at *2 ("The portions of defendants' motions for sanctions brought under Federal Rule of Civil Procedure 11(c)(2) are dismissed" (internal citations omitted)). But that fact does not entitle Respondents to a reduction in attorneys' fees related to Defendants' sanctions motions. Although Respondents had a right to contest those motions, counsel "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *Cleveland Area Bd. of Realtors v. City of*

9

*Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986)); *see Clark v. Liberty Mut. Ins. Co.*, No. 22-cv-01089, 2023 WL 7034038, at *1 (W.D. Tenn. Sept. 12, 2023) ("[It] is well-settled that a reasonable attorneys' fee award must take into account whether the sanctioned party mounted an aggressive defense.").[10]

For the above reasons, I decline to reduce Defendant Zgodzinski's claimed attorneys' fees on this ground.[11]

                ii.        Billing Description Sufficiency

Respondents argue that Defendant Zgodzinski's counsel failed to properly document his billing entries. (*See* Doc. 135, PgID. 2220–21). Respondents note that "no method used in reconstructing the time spent on activities in this matter is explained in the affidavit." (*Id.* at PgID. 2221). Defendant Zgodzinski admits that his counsel did not keep contemporaneous time records. (Doc. 138, PgID. 2345).

The fee movant "has the burden of providing for the court's perusal a particularized billing record." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). Whatever the specific form of this particularized billing record, that record "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (quoting *United Slate*, 732 F.2d at 502 n.2).

In this analysis, courts favor - but do not require - contemporaneous billing records. *Compare, e.g.*, *Sevy v. Barach*, No. 17-13789, 2022 WL 4234951, at *7 (E.D. Mich. Sept. 14,

---

[10] The specific claims on which a party prevails may affect that party's award under 42 U.S.C. § 1988's fee-shifting provisions. *Hensley*, 461 U.S. at 436 ("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole, times a reasonable hourly rate, may be an excessive amount."). But Defendants' motions for fees and costs here arise under 28 U.S.C. § 1927, not § 1988.

[11] As I noted previously, *supra* note 8, I decline to reduce the other Defendants' claimed attorneys' fees on the ground discussed in this section for the same reasons.

10

2022) (finding "that a significant reduction is appropriate for [the fee movant's] failure to keep contemporaneous records and to properly support the reconstructed records submitted"), *with e.g., Sigley v. Kuhn*, 205 F.3d 1341 (Table), at *8 (6th Cir. 2000) (concluding that non-contemporaneous billing entries were sufficient where the fee movant "provided the magistrate judge with computerized calendars and computerized file information which indicated the dates and times of work performed"), *and* "[g]overnment attorneys are not normally expected to record their hours." *Sevy*, 2022 WL 4234951, at *7 (quoting *SEC v. Sethi Petroleum LLC*, No. 15-cv-00338, 2017 WL 262071, at *2 (E.D. Tex. Jan. 19, 2017)).

The billing records that Defendant Zgodzinski's counsel provided in his affidavit suffice under these standards. In that affidavit, counsel described his time spent on distinct and discrete tasks across the separate phases of this litigation. (Doc. 131, PgID. 2152–53).[12]

Respondents' suggestion that a government lawyer must record her time in the same manner as an attorney in private practice is incorrect. At least where there is no additional evidence of inaccuracy or bad faith, a government lawyer's affidavit, like that which Defendant Zgodzinski submitted, sufficiently substantiates that lawyer's billing records.

For the above reasons, I decline to reduce Defendant Zgodzinski's claim for attorneys' fees on this ground.

### b. Remaining Defendants

Respondents challenge the remaining Defendants' claimed hours on several different grounds. I examine them in turn.

### i. Communications Between Defendants' Counsel and Insurer

---

[12] For example, counsel stated that he spent "a total of 3 hours reviewing plaintiffs' pre-hearing filings and 14 hours preparing the pre-*Show Cause Hearing Brief*." (*Id.* at PgID. 2153). Counsel also provided his time to the minute spent attending status conferences regarding Defendants' motions for sanctions. (*Id.*).

11

Respondents argue that Counsel's communications with Defendants' insurer "are not reasonable and necessary charges as they do not constitute communications with the court, counsel involved in this action, or the clients." (Doc. 135, PgID. 2222; Doc. 140, PgID. 2371).

Respondents cite no support for the proposition that only communications with the court, client, or counsel constitute "reasonable and necessary charges." However, I need not decide whether this is a correct statement of the law because I conclude that counsel's communications with Defendants' insurer constitute attorney-client privileged communications.

Under Ohio law, both the insurer and insured are clients of the insurer's retained counsel where mutuality of interest between the insurer and insured exists. *Netzley v. Nationwide Mut. Ins. Co.*, 296 N.E.2d 550, 561 (Ohio Ct. App. 1971) ("We hold that both Nationwide as well as Mr. Netzley, its insured, were clients of the legal counsel retained by Nationwide."); *see also Carolina Cas. Ins. Co. v. Sharp*, 940 F. Supp. 2d 569, 574 (N.D. Ohio 2013) (noting that under Ohio law, "privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest").

Furthermore, Ohio's Rules of Professional Conduct apply in proceedings before me. LR 83.7(a). Those Rules require attorneys to communicate with their clients. *See* Ohio R. of Prof'l. Conduct 1.4.

Here, Defendants' insurer "retained [counsel] and paid the fee bills and expenses." (Doc. 133-2, PgID. 2172). Counsel "represented all Defendants," and "[a]ll of the services were billed to and paid by [Defendants' insurer]." (*Id.*). On these facts and under Ohio law, Defendants' insurer was a client of Defendants' counsel. As a result, Defendants' counsel had an ethical duty to communicate with Defendants' insurer about this litigation. I therefore conclude that such communications were, to use Respondents' phrase, "reasonable and necessary charges."

12

I decline to reduce Defendants' claimed attorneys' fees on this ground.

## ii. Opposing Counsel Background Research

Respondents argue that Defendants' counsel improperly charged for "looking into [the] background of Respondents' counsel." (Doc. 135, PgID. 2224). I disagree.

"[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

In my view, the time (thirty minutes) that Defendants' counsel billed for researching the background of Respondents' newly retained representation meets this standard. Spending a little time understanding opposing counsel's educational background and prior legal experience aids the "pursuit of success" in myriad ways.

For example, the effort may shed light on opposing counsel's favored litigation or settlement strategies. And reviewing opposing counsel's published work or briefing in similar cases may indicate her areas of expertise and likely lines of argument. Such research seems a wise initial step for counsel to take. *See* Sun Tzu, *Sun Tzu on the Art of War* 25 (Lionel Giles trans., Luzac & Co. 1910) ("If you know yourself but not the enemy, for every victory gained you will also suffer a defeat.").

For the above reasons, I decline to reduce Defendants' claimed attorneys' fees on this ground.

## iii. Duplication

Respondents argue that Defendants' counsel improperly claims fees for duplicated work across partners and associates. (Doc. 135, PgID. 2223). Respondents contend that certain time

13

entries for Alyssa Keene and Edmond Jaber, both associates, reflect the same work as those of Frank Scialdone, a partner. (*Id.*).

Assessing the reasonableness of multiple attorneys billing for the same or similar tasks is a "case-by-case determination." *Echols v. Express Auto, Inc.*, 857 F. App'x 224 (Mem), 229 (6th Cir. 2021). In *Northeast Ohio Coalition for the Homeless v. Husted*, the Sixth Circuit held that "[m]ultiple-lawyer litigation is common and not inherently unreasonable." 831 F.3d 686, 704 (6th Cir. 2016). There, the Sixth Circuit concluded that the district court did not abuse its discretion in permitting multiple lawyers to bill for travel to and attendance at the same conferences and hearings during what was a fast-moving and complex dispute. *Id.* at 703–06. The Sixth Circuit also concluded that the district court did not err in permitting multiple attorneys to bill for conferencing with one another. *Id.* at 706 ("There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." (quoting *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007))).

The partner-associate relationship fits somewhat awkwardly into this otherwise permissive approach to multiple-lawyer billing. In *Northeast Ohio Coalition for the Homeless*, the Sixth Circuit noted with approval the district court's reliance on "declarations stating that [multiple-lawyer] discussions [] permitted senior lawyers to provide important strategic guidance to more junior lawyers." *Id.* at 706. Other courts echo this principle. *See, e.g.*, *Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co.*, No. 01–2133, 2003 WL 223082, at *7 (W.D. Tenn. Jan. 28, 2003) ("Naturally it is within the profession's reasonable billing practice for a partner to guide a less experienced attorney in a task."); *Davis v. Fort Bend County*, No. 12-cv-00131, 2020 WL 13660278, at *5 (S.D. Tex. Mar. 25, 2020) ("The Court does not believe it is unreasonable

14

for two attorneys to attend oral argument for one client. That is especially reasonable when one of the attorneys is a younger and less experienced lawyer.").

But billing full fees for associate attorneys may only be reasonable where partner and associate work does not overlap.

In *Abu-Hatab v. Siddiqi*, for example, the plaintiff sought a reduction in attorneys' fees because "the use of associate attorneys, rather than more experienced attorneys, . . . resulted in additional hours being used to complete tasks." No. 06-cv-436, 2009 WL 4505672, at *5 (E.D. Tenn. Nov. 25, 2009). The *Abu-Hatab* Court rejected the plaintiff's argument, concluding "that the lower hourly rates charged by the less-experienced attorneys sufficiently addressed the likelihood that they may require more time to complete a given task." *Id.*

In *Anglo-Danish Fibre*, the District Court addressed a slightly different challenge to claimed associate attorneys' fees. There, the objection at issue was not the use of associate attorneys, but partner-associate duplication of work. *Anglo-Danish Fibre*, 2003 WL 223082, at *7 & n.5. The court there noted that "a more experienced attorney could perform the work in less time than an inexperienced attorney." *Id.* at *7 (quoting *Ottis v. Shalala*, No. 92-cv-426, 1994 U.S. Dist. LEXIS 16325, at *16 n.1 (W.D. Mich. Oct. 20, 1994)). The court therefore "permit[ted] full reasonable hourly remuneration for the attorney who [was] billing at the highest rate, one-half the reasonable hourly enumeration [sic] for the attorney who [was] billing at the lower hourly rate, and no remuneration for additional attorneys performing redundant work." *Id.*

With these precedents in mind, I now turn to Respondents' contentions regarding the allegedly duplicative work of Defendants' counsel.

First, I conclude that the Scialdone and Jaber time entries are not duplicative. Respondents point me to the time entries on April 5 and April 6, 2022. (Doc. 135, PgID. 2223).

15

Jaber's one entry for April 5 reads: "Reviewed and analyzed standard for recusal of judge and burden of proving sanctions are not warranted when show cause hearing has been set." (Doc. 133-5, PgID. 2210). Jaber's one entry for April 6 reads: "Reviewed and analyzed burden of proving sanctions are warranted against party for frivolous litigation." (*Id.*).

Scialdone has two unredacted entries for April 5 and none for April 6. Scialdone's first entry on April 5 reads: "Analyze Plaintiffs' withdrawal of request for Judge Carr to recuse himself." (Doc. 133-2, PgID. 2180). Scialdone's second entry on April 5 reads: "Begin analyzing Plaintiffs' brief regarding burden on sanctions." (*Id.*).

Scialdone's and Jaber's time entries are not duplicative of each other. I understand Scialdone's entries to reflect analysis of Plaintiffs' actions in this case. I understand Jaber's entries to reflect legal research Scialdone might have needed to complete that analysis.

This seems to me (1) exactly the sort of division of labor that one expects within a law firm and (2) exactly the type of tasks that partners and associates might separately handle. Much as the *Abu-Hatab* Court did, I decline to reduce Defendants' claimed attorneys' fees on this ground.

Respondents then point me to eleven entries belonging to Alyssa Keene from June 2022. (Doc. 135, PgID. 2223). Respondents allege that these entries duplicate those of Scialdone, presumably from that same timeframe. (*Id.*).[13]

---

[13] I say "presumably" because Respondents do not clearly state which Scialdone entries they argue are duplicative. However, they do cite to a specific portion of the Scialdone affidavit that includes entries for that same June 2022 timeframe. I therefore make the presumption noted here. The burden is on Respondents to draw my attention to time entries of concern. The law does not require me, for example, to review on my own motion and in detail Defendants' hundreds of submitted time entries. *See Wooldridge*, 898 F.2d at 1176 n.14 ("[A party's] failure to raise more than a generalized objection to the fees . . . would ordinarily require us to review only those items which should have been eliminated through a cursory examination of the bill.").

16

I agree with Respondents. These entries do reflect some duplication related to (1) analyzing Plaintiffs' exhibit and witness lists and (2) reviewing certain notices from and correspondence with the Court.

A percentage-based reduction of these entries balances the burden of duplicative billing with the reality of multiple-lawyer litigation and the need for partner-associate mentorship. Such a reduction comports with the practices of this Circuit and other courts. *See Northcross v. Bd. of Educ.*, 611 F.2d 624, 636–37 (6th Cir. 1979) ("In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services."); *Saenz Mencia v. Allred*, No. 11-cv-0200, 2017 WL 4480836, at *13 (D. Utah Oct. 6, 2017) (reducing certain claimed time by 5% "to account for any unnecessary duplication, excessive, or not reasonably expended time").

For the above reasons, I reduce Keene's hours for the eleven entries Respondents identify by 20%, or 0.38 hours (1.9 hours x 0.2 = 0.38 hours). Keene's related fees for those entries fall by $62.70 to $250.80.

iv. Appeal-Related Fees

Respondents argue that I should not award fees for certain time entries of Frank Scialdone regarding his appeal-related activity and totaling $240.50. (Doc. 135, PgID. 2223).[14]

---

[14] Once again, Respondents point me only to the relevant date range of the challenged entries. But that date range includes entries unrelated to the appeal. I therefore presume, based on the nature of Respondents' argument, that the entries Respondents challenge are those reading as follows:
- 11/22/21 – Preparing correspondence to Jim Stefaniak of PERSO regarding submission of appeal and further handling ($18.50);
- 11/22/21 – Preparing correspondence (7) to Defendants-members regarding Plaintiff's appeal and further handling ($74.00);
- 11/22/21 – Preparing correspondence to Jim Stefaniak of PERSO regarding prudence of complying with district court's order on sanctions, notwithstanding pending appeal ($37.00);
- 3/25/22 – Analyze Sixth Circuit's notice of caption ($18.50);
- 9/6/22 – Preparing correspondence to clients regarding pursuing further sanctions for meritless appeal as invited by the district court ($55.50);
- 9/9/22 – Preparing notice of intent to seek attorney fees for defending meritless appeal ($37.00).

17

Defendants argue in response that such activity is sufficiently "related to the district court action." (Doc. 139, PgID. 2352).

In my sanctions order, I noted: "I do not consider any conduct on appeal as evidence of sanctionable conduct at the district court level." *Bojicic*, 2024 WL 365116, at *3. As I discussed in that order, appellate courts possess their own independent and "ample authority to award expenses" where they judge an appeal before them to be meritless. *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990)). I therefore will not award Defendant counsel's fees that relate to addressing Respondents' appeal of my dismissal of their complaint.

Applying this standard to the relevant time entries, *see supra* note 14, I decline to award all but one of the challenged entries. Counsel's correspondence with his client about the appeal and its further handling do not relate to conduct that occurred before me. Similarly, client correspondence about possible sanctions and attorneys' fees for a meritless appeal regards a matter that the Sixth Circuit would decide, not me. And counsel's charge for "[a]nalyz[ing] [the] Sixth Circuit's notice of caption" concerns Sixth Circuit conduct, not my own.

I will, however, award fees for counsel's 11/22/21 entry reading: "Preparing correspondence to Jim Stefaniak of PERSO regarding prudence of complying with district court's order on sanctions, notwithstanding pending appeal." (Doc. 133-2, PgID. 2176). This entry describes client advice relating to then-ongoing proceedings before me.

For the above reasons, I reduce Defendants' claimed attorneys' fees by $203.50.

v.      Billing Description Sufficiency

---

(Doc. 133-2, PgID. 2176, 2179, 2183). The charges associated with these entries total $240.50, the same amount Respondents challenge in their briefing. (Doc. 135, PgID. 2223). Respondents' failure to be more specific means I cannot know whether they may have had different entries in mind.

18

Lastly, Respondents identify certain time entries of Alyssa Keene totaling $82.50 that lack any description but that Defendants included in their claimed fees. (Doc. 135, PgID. 2224; Doc. 133-2, PgID. 2189–90). Defendants appear to have redacted these entries' descriptions. (*See* Doc. 133-2, PgID. 2189–90). A time entry without a description provides no basis for me "to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (quoting *United Slate*, 732 F.2d at 502 n.2). And Defendants provide no explanation for the redacted descriptions, such as a privilege log, on which I might instead rely.

For the above reasons, I reduce Defendants' claimed attorneys' fees by $82.50.

## Conclusion

For the foregoing reasons, I grant Defendant Zgodzinski's motion for fees and costs in the amount of $6,782.95 in attorneys' fees and $1,385.35 in costs. I grant in part and deny in part the remaining Defendants' fee petition. I grant these Defendants attorneys' fees in the amount of $42,762.30 and costs in the amount of $5,220.20.

It is, therefore, ORDERED THAT:

1. Defendant Zgodzinski's motion for fees and costs (Doc. 131) be, and the same hereby is, granted;
2. Respondents shall pay to Defendant Zgodzinski (or his designated agent) the amount of $6,782.95 in attorneys' fees and $1,385.35 in costs;
3. Defendants Joseph Mazzola, Peter Schade, David Covell, Kirkland Norris, and Donna Skoda's fee petition (Doc. 133) be, and the same hereby is, granted in part and denied in part;

4. Respondents shall pay to Defendants Joseph Mazzola, Peter Schade, David Covell, Kirkland Norris, and Donna Skoda (or their designated agent) the amount of $42,762.30 in attorneys' fees and $5,220.20 in costs.

SO ORDERED.

>*/s/ James G. Carr*
>Sr. U.S. District Judge